## Tams *versus* Bullitt *et al.*

A verdict and judgment against the garnishee in an attachment execution, is not conclusive in a subsequent action by the trustees in insolvency of the defendant in the attachment, against the garnishee.

If parties go to trial on a plea of a former recovery in an attachment execution, without a replication, this does not amount to a confession of the truth of the facts stated in the plea.

Trustees in insolvency are clothed with all the powers of the creditors of the insolvent, for the purpose of setting aside a fraudulent conveyance or assignment.

The copy of an account produced and read before arbitrators, in a suit to which the one against whom it is offered in evidence was a party, and to which he then made no objection, except as to one item, is competent evidence against him, in a subsequent action by the trustees of the other party to the arbitration.

A judgment will not be reversed because of the admission of evidence which the record does not show to have been prejudicial of the plaintiff in error.

Evidence is not to be rejected because it does not prove the party's whole case, if it be a link in the chain of proof.

ERROR to the District Court of *Philadelphia*.

This was an action of *assumpsit* by John C. Bullitt and Frederick Fairthorne, trustees of the estate of John Tams, an insolvent, against William Tams, for money had and received by the defendant for the use of the insolvent, at different times between the 2d January 1851, and the 4th October 1853, under an alleged fraudulent arrangement between them.

John Tams was discharged as an insolvent debtor, on the 9th October 1852, after a protracted opposition; and the plaintiffs were appointed trustees of his estate. It was alleged in this action, that William Tams, the defendant, who was a brother of the insolvent, had been the fraudulent receiver of his moneys, and had in his hands, at the time of the insolvent's discharge, and before and afterwards, large sums of money belonging to John Tams, which were concealed from his creditors; and to recover these moneys the present suit was brought.

The defendant pleaded, *inter alia*, the following special plea, to which there was no replication:—

"And the said defendant, for a further plea on this behalf, by

leave of the court for that purpose first had and obtained, according to the form of the statute in such case made and provided, saith, that the said plaintiffs ought not to have or maintain this their said action against him, because he saith, that on the 20th day of December, A. D. 1851, one Edwin Tams, in the District Court for the city and county of Philadelphia, No. 720, issued an attachment execution sur judgment, against the said John Tams, the assignor of the said plaintiffs, and summoned the said William Tams as garnishee, which was on a judgment of June Term 1851, in said court, No. 454, D. S. B., for the sum of $8000; wherein and whereby said attachment was levied, and seized upon all the goods, money, and property, here sought to be recovered in this action from the said William Tams, and being the same money, goods, and property mentioned in the said plaintiffs' bill of particulars, as given to and furnished to the said defendant's counsel; and also being the same property, money, and subject here in controversy; and it was so proceeded in said action and attachment execution, that on the 13th day of May 1853, a verdict was rendered in favour of the said Edwin Tams, against this defendant for the sum of $3137.50, and on the 8th day of June 1853, a judgment was rendered in favour of the said plaintiff on said verdict, which said judgment, on the 29th day of March 1854, was affirmed by the Supreme Court, and on the 16th day of May 1854, the whole amount of said judgment was paid by the said William Tams, and the same was satisfied of record in favour of the said Edwin Tams; and this defendant avers, that all the money, goods, chattels, wares, merchandise, and property mentioned in said plaintiff's declaration and bill of particulars furnished to the counsel of the said defendant, and which these said plaintiffs now have sued for, was thus attached and seized before any assignment was made by the said John Tams to the said plaintiffs, as the trustees of the estate of John Tams, an insolvent debtor, and that all the money, goods, and effects which this defendant then had or held, when said assignment was made to the said plaintiff, had been and were seized and attached by said Edwin Tams, and by said attachment received from this defendant; and that since the issuing of said attachment this defendant has never had or received any money, goods, chattels, or property belonging to the said John Tams; wherefore he prays judgment whether the said plaintiffs ought, or ought further to have or maintain their aforesaid action against him."

John Tams, the insolvent, had made an assignment of his stock of goods to the defendant on the 11th November 1850, and the attachment pleaded grew out of that assignment. The case was before this court on error, and is reported in 2 *Casey* 97.

After the discharge of John Tams, a dispute having arisen between him and the defendant, as to the state of their accounts,

[Tams *v.* Bullitt *et al.*]

arbitrators were selected, by whom a settlement was made between them. At the arbitration, an account was produced and read, to which no objection was made by the present defendant, except as to a single item. The papers relating to this arbitration were destroyed; but a copy of this account was produced and offered in evidence on the trial of the present cause; the defendant objected to the admission of this paper in evidence, but the court overruled the objection, and sealed a bill of exceptions. There were also other exceptions to evidence, which are sufficiently noticed in the opinion of the court.

The defendant gave in evidence the record of the attachment set forth in his special plea, and presented the following points in writing, upon which he requested the court to charge the jury:—

1. That it appearing from the evidence, that an attachment execution having been issued at the suit of Edwin Tams *v.* William Tams and others, December Term 1851, No. 720, on the 20th December of that year, and on a judgment for $8000, and served on all the garnishees, and that on the 13th of May 1853, a verdict was rendered against William Tams for $3137.50, which was subsequently paid, under a judgment in the Supreme Court, by him, it being before John Tams took the benefit of the insolvent law, and the question having been then tried and decided, that the purchase by William Tams from John was fraudulent; and the jury having found the value of all the fraudulent property which then passed into William Tams's hands, to be of but $3137.50, it is conclusive against the assignees, the present plaintiffs, and therefore they cannot recover for any property which was held by the defendant, belonging to John Tams at the time of the service of said attachment, and the time of the trial of said cause, whether obtained fraudulently or otherwise.

2. That under the evidence in this case, the plaintiffs having shown that, if there was any fraud in the sale of John Tams to William Tams, it was at the time of the purchase and transfer of the goods on the 11th of November, A. D. 1850, and all the money under that sale, and the proceeds of it was received by the defendant prior to the issuing of the attachment of Edwin Tams, in December 1851, and a court and jury having fixed the value of all the property thus alleged to have been fraudulently obtained by the defendant, neither John Tams nor his assignees can now recover any other sum, as the price of the goods or money so received; and, therefore, the verdict of the jury should be in favour of the defendant.

3. That even should the jury be of the opinion that the sale of the 11th of November 1850 was fraudulent, and that all the goods in the store of John Tams were transferred to William Tams for the purpose of hindering, delaying, and defrauding his creditors, the extent of that fraud having been fixed by an attach-

[Tams *v.* Bullitt *et al.*]

ment, and settled by a verdict and judgment, anterior to John Tams having taken the benefit of the insolvent law, there was no property thus held and attached which could pass under the assignment, on his discharge as an insolvent debtor.

4. There being no evidence that William Tams had ever received any money or goods belonging to John Tams, but what was transferred on the 11th of November 1850, when the purchase of the store and stock of goods was made, there can be no recovery in this action.

The court below declined so to instruct the jury, to which the defendant excepted; and a verdict and judgment having been given for the plaintiffs for $2647.22, he removed the cause to this court, and here assigned for error: 1. The admission of the evidence excepted to on the trial. 2. The refusal of the court below to charge as requested in the defendant's points.

*Parsons* and *Cuyler*, for the plaintiff in error.—The verdict and judgment in the attachment execution was conclusive as to the amount of property belonging to John Tams, in the hands of the defendant; and there can be no recovery by these plaintiffs: Tams *v.* Richards, 2 *Casey* 97; Simes *v.* Zane, 12 *Harris* 242; Rockwell *v.* Langley, 7 *Id.* 502; Marsh *v.* Pier, 4 *Rawle* 285; 15 *Johns.* 432; 16 *Id.* 136; 8 *Id.* 383; Hunter *v.* Potts, 4 *T. R.* 189; Sill *v.* Warsmith, 1 *H. Bl.* 665; *Sergeant on Attachments* 183–4; *Customs of London* 121; 1 *Sid.* 327; Swift *v.* McCall, 3 *Binn.* 338; s. c. 4 *Id.* 371.

*Gerhard* and *Hirst*, for the defendants in error.—To make a former verdict and judgment conclusive, it must be between the same parties. The party must have had a right to appear and be heard: 1 *Stark. Ev.*, part 2, §§ 57, 60; 1 *Greenl. Ev.*, §§ 523–8; Hart's Appeal, 8 *Barr* 37; Carmack *v.* Commonwealth, 5 *Binn.* 184; Respublica *v.* Davis, 3 *Yeates* 128; Timbers *v.* Katz, 6 *W. & S.* 290; Bratton *v.* Mitchell, 3 *Barr* 49; Hurst *v.* McNeill, 1 *W. C. C.* 70; Childs *v.* Digby, 12 *Harris* 26; Hamm *v.* Beaver, 7 *Casey* 58; Merchants' Insurance Company *v.* Algeo, *Id.* 446; Ihmsen *v.* Ormsby, 8 *Id.* 198; Breading *v.* Siegworth, 5 *Id.* 396.

The opinion of the court was delivered by

STRONG, J.—It is exceedingly difficult to obtain a clear view of all the points in this case from the paper-book which has been furnished to us. It appears, however, to have been an action of *assumpsit* for money had and received, brought against William Tams, by Bullitt & Fairthorne, assignees of John Tams, under the insolvent laws. John Tams was discharged as an insolvent on the 9th of October 1852, and his assignment to the trustees is dated on the 5th of July in the same year. But one of all the pleadings

[Tams *v.* Bullitt *et al.*]

in the case is exhibited. The bill of particulars represents the claim to have been for divers sums of money received by the defendant at different times between January 2d 1851, and October 4th 1853. On the trial of the cause, objection was made to the admission of certain evidence offered by the plaintiffs, and the ruling of the court below, admitting it, is made the ground of complaint here. We are unable, however, to perceive that any error was committed in receiving the evidence. The bill of exceptions is not on our paper-books, and there is nothing to show that the testimony of Mr. Woodward could, by any possibility, have injured the plaintiff in error, even if it was not pertinent to the issue on trial. And we can well see how it may have been pertinent. If it tended to establish that the transactions between William Tams and John Tams were fraudulent as against the creditors of the latter (which seems to have been the theory of the plaintiffs), it was clearly admissible, even though it did not prove directly any item in the bill of particulars, or in itself show any indebtedness on the part of William to John Tams. The right of the plaintiffs to recover might well depend upon the question whether the transactions between William Tams and John Tams were honest, or in fraud of creditors. As between the two brothers, there may have been no right in John to recover money received by William, but if the money came to William's hands in pursuance of a fraudulent arrangement, the plaintiffs, who were clothed with the rights of the creditors, could disregard that arrangement, and recover when John Tams himself could not. For aught that we can see, therefore, the evidence offered was perfectly legitimate. The avowed purpose of offering it was to show fraud, and without the entire case before us, it is impossible to say that it was not directly pertinent. Indeed this exception was not pressed on the argument. It was unnoticed, if not abandoned.

The second assignment of error is equally without foundation. It is obvious, that the evidence offered tended almost irresistibly to show that William Tams had money belonging to John. Else why charge commissions for receiving it? And that they were commissions for receiving money prior to John Tams's insolvency, is evident, from the account afterwards given in evidence, which states receipts as early as January 2d 1851. That the testimony did not prove the plaintiff's whole case, is no reason why it should have been rejected. It was a link in the chain, and, connected with what was proved at a subsequent stage of the trial, no unimportant link.

Nor can we doubt that the account proved by Charles Brooks was properly received in evidence. It is true, the witness did not prove that William Tams had read it, and expressly acknowledged its correctness. But there was sufficient evidence to prepare the

[Tams v. Bullitt et al.]

way for its being submitted to the jury to find whether the items therein contained had been assented to by him. It had been before the arbitration at which both William and John were present, and at which an effort was made to effect a settlement between them. The items had been read in the presence of both the brothers, and William then made no objection to any but one. This was certainly some proof of an admission, some proof of an assent to the correctness of the statement, quite enough to send it to the jury.

The only debatable question in this case is that presented by the fifth and sixth assignments of error. The defendant gave in evidence the record of an attachment execution, sued out by Edwin Tams against John Tams, defendant, and William Tams and Richards & Bispham, garnishees. This execution was founded upon a judgment against John Tams for $8000, and was issued on the 20th of December 1851, of course, before the defendant's insolvency. On the 13th of May 1856, a verdict was obtained against William Tams, one of the garnishees, for $3137.50, upon which judgment was entered. Subsequently, Richards & Bispham, the other garnishees, obtained a verdict and judgment in their favour. The defendant below having pleaded this attachment, and given it in evidence, and having pleaded also, that it was levied upon all the goods, money, and property sought to be recovered in the present action, requested the court to instruct the jury that the verdict and judgment, with the subsequent payment of the amount by William Tams, was a bar to the plaintiffs' recovery. The refusal of the court thus to charge, it is now strenuously contended was erroneous. There was no replication to the defendant's plea. The cause went to trial without any joinder of issue upon it, but the failure of the plaintiffs to reply did not amount, as is supposed, to an admission of the facts averred in the plea. The defence stands, therefore, on the record of the attachment, and on that alone. Is, then, a recovery by an attaching creditor against a garnishee, in all cases, a bar to a subsequent suit against the same garnishee, for money due to an execution debtor at the time of the first garnishment? Is it so, even when the avails of the recovery were not sufficient to satisfy the attachment execution? That an attaching creditor stands in the position of the debtor whose goods or credits are attached in the hands of a third person, is true in some particulars, but not in all. That a judgment upon an issue between the creditor and the garnishee, does not conclude another creditor from prosecuting an attachment against the same person as garnishee of the same defendant, was shown in Breading v. Siegworth, 5 Casey 396. The attaching creditor was there regarded as the real party plaintiff in the issue, and the first attachment was held, so far as related to the second attaching creditor, as res inter alios

[Tams v. Bullitt *et al.*]

*acta.* He was not barred by a judgment in favour of the garnishee. This could not be so, if the attachment be the same thing in effect as a suit brought by the execution debtor against the person garnished. In the absence of fraud, a judgment in such a suit would be conclusive upon the debtor and all his creditors. Whether a judgment in favour of, or against a garnishee, in an attachment execution, would conclude the debtor, it is not necessary to inquire. In this case, even if the judgment on the issue between Edwin Tams and William Tams would have barred any subsequent suit by John against William, it by no means follows, that it barred John's assignees in insolvency. Their rights are superior to those of their assignor. Unlike him, they are not affected by his fraudulent conveyances or contracts. They claim not through his fraudulent arrangements, but superior to them. It is not easy to see how creditors, represented as they are by such assignees, can be barred by a proceeding to which they were not parties. The fraudulent debtor could not bar them, and between them and Edwin Tams there was no privity.

These observations seem to us sufficient to vindicate the action of the District Court, in refusing to affirm the defendant's four points. If, by virtue of a fraudulent arrangement between John Tams and William Tams, the money of the former came to the hands of the latter (and whether there was fraud was a question not for the court, but for the jury), assignees acting under a compulsory assignment could recover it, and their right to recover it would not be extinguished by a verdict and judgment in a suit brought by the fraudulent debtor; and, of course, not by a judgment upon a *scire facias* sued out by Edwin Tams against the fraudulent bailee.

There is still another view of the case which supports the refusal of the court to affirm the defendants' points. As already stated, this was an action for sums of money had and received by William Tams for the use of John Tams at first, and afterwards for the use of his assignees. The attachment of Edwin Tams, given in evidence, does not appear from the record itself to have been laid upon these sums of money or credits. What was sought to be recovered on the trial of the *scire facias* against William Tams and Richards & Bispham, does not very distinctly appear, but it would seem from the report of the case in 2 *Casey* 97 (Tams *v.* Richards), that all there claimed was the value of a stock of goods sold by William to John. No attempt appears to have been made to recover the debts for which the present suit is brought. The defendant's liability for these was not put in issue. His liability for the sums of money received by him is entirely distinct from his liability for the stock of goods which he obtained. How, then, can it be said, that a judgment for the value of the goods bars a claim for a different and independent indebtedness? May not a

[Tams *v.* Bullitt *et al.*]

creditor maintain a suit against his debtor for a sum of money received to his use from A. after he has recovered from the same debtor a different sum, also received from A. but at another time, though both sums were in the debtor's hands when the first suit was brought? The subject-matter of the suits is not the same. Before the first can be a bar to the second, it must appear affirmatively that both debts were claimed in the first. The language of LOWRIE, J., in Tams *v.* Richards, is not inconsistent with this. It is to be considered as applied to the facts of that case. There the claim was for a stock of goods received by William Tams, and in part sent to auction. After the value of those goods had been recovered from Tams, it was held, that it could not again be recovered from the auctioneers. That is very far from sustaining the position that a distinct debt could not have been.

The record of the other attachment sued out by Sanders Lewis was entirely inadmissible, and there was no error in rejecting it. The attachment was not laid until after the insolvency of John Tams, and without that a judgment against Lewis concluded no other creditor than himself: Breading *v.* Siegworth, *supra.*

The judgment is affirmed.