## Wright and Slingluff *versus* Wigton *et al.*

1. Real estate which has passed to assignees under a voluntary deed of assignment for the benefit of creditors, is not exempt from the payment of taxes, whether assessed thereon before or after the assignment was made.

2. The personal property remaining on the land thus taxed, after the assignment, is liable to distress for the non-payment of the taxes.

3. School Directors of City of Lancaster *v.* Rathvon, 6 Casey 533, distinguished.

March 21st 1877.　Before AGNEW, C. J., MERCUR, GORDON, PAXSON, WOODWARD and STERRETT, JJ.　SHARSWOOD, J., absent.

Error to the Court of Common Pleas of *Montgomery county :* Of January Term 1877, No. 160.

This was an amicable action by C. W. Wright, collector of taxes for the county of Montgomery and also collector for the borough of Norristown, and Charles Slingluff, collector of school taxes for the school district of Norristown, against R. B. Wigton and William H. Johns, assignees and trustees for the benefit of creditors of Schall & Co.

The following case was stated for the opinion of the court :—

1. That on the 31st day of December 1874 said Schall & Co. executed and delivered a voluntary deed of assignment of all their partnership property, real and personal, in trust for the benefit of their creditors, and that the said defendants are the assignees or trustees of said assigned estate.

2. That the said C. W. Wright, on the 18th day of December 1875, by virtue of a lawful warrant issued for that purpose against the said Schall & Co., made a distress and levy upon the said assigned personal property in the borough, as follows :—

| | |
|---|---|
| For said borough tax for the year 1874, | $320.54 |
| And for the same tax for the year 1875, | 320.54 |
| And also, for the said county tax for the year 1875, | 161.14 |
| | $802.22 |

3. That the said Charles Slingluff, at the same time and in like manner, by virtue of a lawful warrant issued for that purpose, against the said Schall & Co., made a distress and levy upon the said assigned personal property in said borough, for said school district of Norristown, school tax for the year 1875–6, for the sum of $286.20.

4. That the said tax for the year 1874 was assessed on the said assigned real estate of said Schall & Co., prior to the date of the said deed of assignment, and all the rest of the said taxes were assessed against the said Schall & Co., since the date of said deed of assignment.

If the court shall be of the opinion that the personal property distrained and levied upon as aforesaid is liable for the payment of

[Wright and Slingluff *v.* Wigton.]

said taxes, or any part thereof, then judgment to be entered accordingly in favor of the respective plaintiffs for such amount as the court shall be of opinion each is entitled to.

But if the court should be of opinion to the contrary then judgment to be entered in favor of the defendants as between both or either of the said plaintiffs.

Either party to have the right to sue out a writ of error to the Supreme Court.

The court, Ross, P. J., entered judgment for the defendants, which was the error assigned.

*B. E. Chain, George N. Corson* and *J. Wright Apple,* for plaintiffs in error.—The authority for the collection of county taxes in Montgomery county, which is under the provisions of the Act of 17th March 1868, Pamph. L. 342, and the supplement thereto of 10th May 1871, Pamph. L. 659, is similar to that conferred by the Act of 15th April 1834, Pamph. L. 518. See the 20th, 21st and 46th sections of the latter act. In addition to these provisions the Act of 16th March 1866, Pamph. L. 226, provides that the goods of any owner or occupier of any premises within the county of Montgomery shall be liable to be distrained for the taxes of the current year, although said taxes may have been assessed on said premises before such owner took possession thereof. And further, that the goods may be distrained, whether on the premises or not, wherever they may be found in the county.

The tax of 1874 was assessed prior to the assignment, and this Act of 1866 directly applies, for the tax was for the current year.

The defendants contended, however, that because the tax was not levied during the possession or occupancy of the assignees, therefore the property is not liable to levy, and cited Smeich *v.* County of York, 18 P. F. Smith 439, to support this contention; but the principle of that case will not apply here, for an assignee under a voluntary assignment is not a purchaser: Twelves *v.* Williams, 3 Whart. 485; Vandyke *v.* Christ, 7 W. & S. 373; Ludwig *v.* Highley, 5 Barr 132; Spackman *v.* Ott, 15 P. F. Smith 131; Ritter *v.* Brendlinger, 8 P. F. Smith 68. And the possession and occupancy of the assignee then by virtue of the assignment, is but the possession and occupancy of the assignor.

The fact that it was assessed to " Schall & Co.," will not relieve the property from the payment of taxes.

The whole spirit of the law shows that it is *property* which the tax laws are intended to reach.

These taxes were assessed and levied during the possession and occupancy of the persons whose property is now levied on to satisfy those taxes. Nor will the contention that because the property is held in "trust" for creditors it is relieved from the payment of taxes, avail the defendants.

[Wright and Slingluff v. Wigton.]

The case of Parsons v. Allison, 5 Watts 72, ruling that "a collector's warrant is not a lien upon the personal property of one by whom taxes are due," will not apply to this case since the Act of 1866.

James Boyd, for defendants in error.—Montgomery county has special acts for the collection of certain taxes. The first is the Act of 1866. But this act was supplied, so far as state and county taxes are concerned, by the Act of March 17th 1868, Pamph. L. 342, entitled "An act relating to the collection of state and county taxes in the county of Montgomery," the 13th section of which declares "all laws altered or supplied by this act are hereby repealed, so far as they relate to the county of Montgomery."

If, however, the Act of 1866 is operative, does it apply to these assignees?

Assignees for the benefit of creditors are not purchasers of the real estate taxed, and are not owners or occupiers in the sense intended by the act. They are merely trustees or persons recognised by law to execute a trust in conformity with such law. Distress for taxes upon the goods assigned, can no more interfere with their execution of the trust, than can a fi. fa., or other execution process, issued after the execution and delivery of the assignment: School Directors of Lancaster v. Rathvon, 6 Casey 535 ; Jefferis's Appeal, 9 Casey 40.

The tax for 1875 must be collected in the manner pointed out by the third section of the Act of 1868.

It is not pretended that these assignees were named in the schedule accompanying the warrant, as among those who were charged with unpaid taxes; nor were the officers authorized and required to demand and receive from them as delinquents named in the schedule, the amount of any taxes charged therein, nor were they authorized to levy the same by distress and sale of the goods and chattels, and therefore are not within nor subject to the letter or spirit of said act.

If the collection is subject to the provisions of the Act of 1834 as claimed, then the question raised was decided in Smeich v. County of York, supra. The right of the collectors to levy on any property of Schall & Co. for these taxes is not denied; but they cannot levy on the assigned personalty, as they made no levy before the assignment, they had no lien on it and have no right to do so now. In Moore v. Marsh, 10 P. F. Smith 46, THOMPSON, C. J., says : "Since the case of Parsons v. Allison, 5 Watts 72, and Baskin et al. v. Kontz and Hummel, Id. 76, it has never been supposed that a collector's warrant is a lien on property for unpaid taxes before actual seizure  These cases settle conclusively that it is not."

[Wright and Slingluff *v.* Wigton.]

Mr. Justice MERCUR delivered the opinion of the court, May 7th 1877.

As a general rule all lands in this Commonwealth are subject to taxation. No Act of Assembly has exempted from such liability the real estate on which the taxes in question were assessed. It is claimed that the voluntary assignment of this land, made for the benefit of creditors, had that effect. That it not only prevented the collection of the taxes assessed prior to the assignment, but also prohibited the levying of subsequent taxes on the land while it remained in the hands of the assignee. This view gives an undue effect to the assignment. A belief in its correctness, probably did much towards leading the court to an erroneous conclusion.

It is well settled in this state, by numerous decisions, that a voluntary assignee is not a bona fide purchaser for value. He is the mere representative of the debtor, enjoying his rights only, and is bound where he would be bound : Twelves *v.* Williams, 3 Whart. 485 ; Vandyke *v.* Christ, 7 W. & S. 373 ; Ludwig *v.* Highley, 5 Barr 132 ; In re Fulton's Estate, 1 P. F. Smith 204 ; Spackman *v.* Ott, 15 Id. 131. Nor are the creditors, for whom he holds the property in trust, purchasers for value. They are not parties to the deed. They have relinquished nothing in compensation of the benefits of the trust. They have not agreed to look to it for satisfaction of their claims. They have no title to the property assigned. They acquired a right only to enforce the duty undertaken by the assignees : Twelves *v.* Williams, *supra ;* Jefferis's Appeal, 9 Casey 39 ; Fulton's Estate, *supra ;* Spackman *v.* Ott, *supra.* The assignee then being the hand, only, of the assignor, and through which the latter distributes his property, it follows that it remains liable to taxation, as if no assignment had been made. It is no more exempt from taxation than lands devised to an executor to sell for the payment of debts. In either case the lands continue subject to taxation.

The remaining question is whether the personal property was legally liable to distress for the non-payment of the taxes. The borough taxes were for the years 1874 and 1875; the county tax for 1875, and the school tax for 1875–6. The assignment of both real and personal estate was made 31st December 1874. The distress was made 18th December 1875, on the personal property assigned, which still remained on the premises thus taxed.

It is undoubtedly true that the warrant of a collector of taxes is no lien on property before actual seizure. It was also held in Smeich *v.* County of York, 18 P. F. Smith 439, that under the Act of 15th April 1834, the goods and chattels of a person occupying real estate, were not liable to distress and sale for the non-payment of taxes assessed thereon in like manner as if they were the goods and chattels of the owner of such real estate, unless they were assessed during his possession or occupancy thereof. But as

[Wright and Slingluff *v.* Wigton.]

we have shown the assignment was not a bona fide sale of the property for a valuable consideration. The title thereto remained in the assignor for all purposes not inconsistent with the trust. Neither the assignee nor the creditors can successfully claim that the property shall be exempt from the public burdens. This view of the case is further supported by the Act of 16th March 1866, Pamph. L. 226. Section one declares "that from and after the passage of this act, the goods and chattels of any owner, or occupier, of any messuage or lot or piece of ground, within said county of Montgomery, shall be liable to be distrained for the taxes of the then current year assessed on such premises, although said taxes may have been assessed on said premises before such owner took possession, or became owner thereof."

Section two authorized the goods and chattels to be distrained anywhere within the county, although the same were not on the premises. The Act of 17th March 1868, Pamph. L. 342, relating to the collection of taxes in the same county, does not repeal these provisions in the Act of 1866. It leaves the liability of property to taxation, and the property subject to distress for the non-payment of taxes untouched.

The tax for 1874 was laid, and due, before the assignment. The personal property was liable to distress at the time the assignment was made. No such change of possession took place as to remove that liability.

The School Directors of the City of Lancaster *v.* Rathvon, 6 Casey 533, has been cited as sustaining a different view. An examination of that case, shows it to be wholly unlike the case now under consideration. There all the taxes assessed on the real estate had been paid. No question was raised as to the liability of the assignee to pay those taxes, nor of the liability of the personal property thereon, to distress for their non-payment. The only question was whether the "bills receivable" were liable to assessment and taxation in the hands of the assignee? The court held they were not. Nothing in that case, in the slightest degree, impinges on the doctrine that the personal property on the land is liable for the taxes assessed on the same land.

It follows, therefore, the learned judge erred in entering judgment in favor of the defendant, and it must be reversed.

> Judgment reversed. And now, to wit, May 7th 1877, judgment is hereby entered in favor of C. W. Wright, one of said plaintiffs, for the sum of $802.22, and in favor of Charles Slingluff, the other plaintiff, for the sum of $286.20, according to the case stated.